MOLLIE HAZARD ET AL. V. WESTERN COMMERCIAL TRAVELERS ASSOCIATION ET AL.

Decided February 20, 1909.

**1.—Benefit Certificate—Change of Beneficiaries—Mental Incapacity—Burden of Proof.**

Where the plaintiffs sued upon a benefit insurance certificate that evidenced liability upon its face and named them as beneficiaries, and certain defendants, who were made parties, alleged that they were the beneficiaries in a former certificate which had been surrendered; that the certificate under which plaintiffs claimed had been issued in lieu thereof, and that at the time the change was made, the insured, who alone could change the beneficiary under the rules of the order, was mentally incapacitated to give his consent to such change, the burden of proof upon the issue of mental incapacity was upon such defendants; and a charge imposing upon the plaintiffs the burden of proof to show by a preponderance of evidence that the change was made with the consent of the insured, was error.

**2.—Witness—Impeachment.**

In impeaching a witness the inquiry must be confined to his general reputation for truth, and not extend to his general moral character.

**3.—Same—Criminal Charge.**

It was error to permit it to be shown on cross-examination that the witness had been indicted in another county for criminal conspiracy, the issue being as to the credibility of the witness.

**4.—Charge—Must be Limited to Facts in Evidence.**

A charge should be limited to the facts in evidence and not leave the jury to the domain of speculation as to causes that actuate a party about which there is no testimony.

**5.—Same—Mental Incapacity—Motive.**

An instruction, "If you believe from the evidence that Hazard was in a weak, enfeebled mental and physical condition, then, if you so find he was in such condition, was compelled by fear or otherwise to sign said document or make such request as was made to change the policies," etc., was error. The word "otherwise" as used was calculated to mislead the jury, and left them to speculate as to what motive influenced the party to sign the document.

Appeal from the District Court of Dallas County. Tried below before Hon. E. B. Muse.

*George H. Plowman,* for appellants.

*Crane, Gilbert & Crane,* for appellees.

RAINEY, CHIEF JUSTICE.—Mollie Hazard, surviving widow of Hugh H. Hazard, instituted this suit against the Western Commercial Travelers Association of St. Louis, Missouri, to recover on a benefit insurance certificate for $4,000, issued on the life of her deceased husband, Hugh H. Hazard, payable to Mollie Hazard for the sum of $3400, and to Effie Hazard for the sum of $600.

On December 6, 1906, the Western Commercial Travelers Association filed its answer herein, stating that about 1893 a certificate for $4,000 was issued to Hugh H. Hazard on his life, payable at his

death half to Miss Effie Hazard and half to H. D. Hazard. That at a subsequent date a new certificate was issued upon the surrender of the old one, wherein Avilla Hazard, Effie A. Hazard and Hugh D. Hazard, mother and sister and son of H. H. Hazard, were named as beneficiaries. That on October 22, 1902, on surrender of the last named certificate and in lieu thereof another certificate was issued, wherein Mrs. Mollie Hazard became beneficiary to the extent of $2,000, and Miss Effie A. Hazard to the extent of $600, and H. D. Hazard to the extent of $1400. That on June 23, 1903, said H. H. Hazard surrendered said benefit certificate to said association and had reissued to him a new certificate for the sum of $4,000, payable on the death of said H. H. Hazard as follows: $3400 to Mrs. Mollie Hazard, wife, $600 to Miss Effie A. Hazard. Said association also alleged that said reissues and changes were made by it upon what purported to be upon its face the lawful and rightful act of the association in compliance with the apparent legal and lawful demands of said H. H. Hazard during his lifetime, and that if the said acts and things done under apparent color and authority of law were not in fact legal, just and proper, such acts on the part of the defendant were innocently done, upon proofs which apparently conformed to the requirements of the by-laws and charter of the company. Said defendant further answering, admitted that it was indebted at the institution of this suit and now in the sum of $4,000, but that immediately after the proofs of loss were received in accordance with the by-laws it was notified by the agents and attorneys of its co-defendants that plaintiff was not the legal beneficiary of the certificate upon which plaintiff's suit was predicated, but that Mrs. Avilla Hazard, Miss Effie A. Hazard and H. D. Hazard were the true and lawful beneficiaries thereof, and that if this defendant should pay the plaintiff as beneficiary that it would do so at its peril, and averred that its codefendants charged that plaintiffs wrongfully and fraudulently procured the reissue of the certificate, and attacked the legality thereof. Said association also offered to pay to the person adjudged to be the rightful beneficiary of said certificate, the said amount of $4,000, and prayed that it be directed by the court how and to whom said defendant should pay the sum admitted to be due. Said association subsequently deposited the same sum of $4,000 in the registry of the court, subject to the judgment of the court.

Mrs. Avilla Hazard, Miss Effie A. Hazard and H. D. Hazard were made parties, and afterwards filed their fourth amended answer alleging that on March 4, 1893, a certificate was issued on the life of H. H. Hazard for the sum of $4,000, one-half of which was to be paid to Miss Effie Hazard and the other half to H. D. Hazard. That at a later date, about 1898, the exact date of which they were unable to give, said H. H. Hazard surrendered said certificate and had the association in lieu thereof to issue him another certificate in the sum of $4,000 on his life, in accordance with the by-laws of said association which insured said H. H. Hazard's life for the benefit of Mrs. Avilla Hazard, Miss Effie Hazard and H. D. Hazard. Said defendants further averred that the certificate last named thus issued was still in force; that the plaintiffs wrongfully and fraudu-

lently claim that said certificate was surrendered up by H. H. Hazard and another issued in lieu thereof in the sum of $4,000, one-half of which was payable to plaintiff, $600 to Miss Effie Hazard and $1,400 to H. Dodson Hazard; that said last mentioned certificate was issued on or about October 22, 1902. They further alleged that plaintiffs falsely and fraudulently claim that this last named certificate was subsequently surrendered by H. H. Hazard on the 23d of June, 1903, and still another certificate issued in lieu thereof for $4,000, of which $3,400 was to be paid to plaintiff, and $600 to Miss Effie Hazard. Said defendants denied that either of the last named certificates was ever lawfully issued, or that the certificate for $4,000, payable to these plaintiffs, was ever lawfully surrendered or canceled, in that, on October 22, 1902, and June 23, 1903, the said Hazard was of unsound mind and was unable to understand the nature of any business transaction; that if his name was signed to any request or if he ever made any such request to surrender the particular certificate upon which these defendants have declared in their answer and cross-bill, that he was mentally incapable of understanding the nature of his act, and that he did not understand the nature of his request nor its effect on these defendants, nor the natural and legal effect of any such instrument. That if said H. H. Hazard ever surrendered said certificate and made written request for another certificate, that he was insane when he surrendered said certificate and at the date when he requested said change; that if not insane, he was in such a weak and feeble condition mentally and physically as to be unable to resist the demands made by said plaintiffs, and that he was by each of them unduly influenced to make such request by threats of punishments of various kinds and character, the details of which the said defendants were not advised; and that he was unduly influenced by said plaintiffs and was put in fear of various punishments with which they had threatened him.

A trial was had and resulted in a verdict and judgment for Avilla, Effie and H. D. Hazard.

The Western Commercial Travelers Association having admitted liability and paid the amount of the certificate into court, the controversy was as to who was entitled to the said amount. The benefit certificate was originally issued in 1893, and there had been two changes, or rather two new certificates had been issued by the association making changes in the beneficiaries. Under the laws of the association the insured was permitted to change the beneficiary at his pleasure, regardless of the wishes of the beneficiary. The appellees, Hazards, attacked the validity of the change in the certificate, alleging, in effect, that Hugh H. Hazard was mentally incapacitated to give his consent to said changes, and that he was unduly influenced to have such changes made. Upon this issue, raised by the pleadings and evidence, the court charged the jury that "the burden of proof is upon plaintiffs to show by a preponderance of the evidence that the changes were made with the consent of H. H. Hazard." This charge is attacked by the appellants as being contrary to law. The plaintiffs had sued upon a certificate that evidenced liability upon its face. . Appellees, Hazards, had attacked said certificate on

the ground that Hugh H. Hazard at the time it was issued was mentally incapacitated to give his consent to the change in the beneficiaries, and to establish said plea and entitle them to recover the burden of proof was upon them and not upon the plaintiffs. The issue of mental incapacity of Hugh H. Hazard to make the change in the certificate, was affirmatively presented by appellees, Hazards, and the burden of establishing this issue rested upon them. (16 Cyc., 926-7; 1 Jones on Ev., 176.)

On the trial Reese Parry, the then husband of Mollie Hazard, being on the witness stand, was asked on cross-examination if he had not been indicted in Hill County for criminal conspiracy, which question the witness was permitted to answer over the objection of appellants. The court charged the jury that such testimony could only be considered on the question of the witness's credibility. The admission of this testimony, we think, was error. A witness can not be impeached in this way. The inquiry must be confined to his general reputation for truth, and not to his general moral character. (Missouri, K. & T. Ry. Co. v. Creason, 101 Texas, 335; Price v. Wakeham, 48 Texas Civ. App., 339.)

The court in the tenth paragraph of its charge instructed the jury as follows: "If you believe from the evidence that Hugh Hazard was in a weak, enfeebled mental and physical condition, then, if you so find he was in such condition, was compelled by fear or *otherwise* to sign such document or make such request as was made to change said policies," etc. The word "otherwise," as used in the charge was calculated to mislead the jury in that it gave them no guide for their action, but left them to speculate as their fancy might dictate as to what motive influenced Hazard to sign the document referred to. A charge should be limited to the facts in evidence and not leave the jury to the domain of speculation as to causes that actuate a party about which there is no testimony. (Lodwick Lumber Co. v. Taylor, 39 Texas Civ. App., 302.)

Many other assignments of error are presented for our consideration, but the foregoing are all that we deem it necessary to discuss. There is one controlling issue in the case, and that is, was Hugh H. Hazard mentally incapacitated to give his consent to the change in the benefit certificate? Whichever way this is legally determined will settle the controversy. For the errors indicated the judgment is reversed and cause remanded.

*Reversed and remanded.*