MYRTLE BEATTY v. RUBY STRICKLAND.

186 So. 542.
Division A.
Opinion Filed February 10, 1939.

*Jennings & Watts,* for Appellant;

*J. S. Blackwell* and *Davis & Davis,* for Appellee.

BUFORD, J.,—Dr. H. M. Strickland was a practicing physician in Live Oak, Florida. His wife was Ruby Strickland, appellee.

In 1928 he employed Myrtle Beatty to work in his office as a helper. Sometime in April, 1931, Dr. Strickland procured a life insurance policy in the sum of $5,000.00 issued by Franklin Life Insurance Company. In that policy Ruby Strickland was named as beneficiary, but the policy carried with it the unrestricted right to change the beneficiary reserved to the insured.

In January of 1932 Dr. Strickland wrote a letter to Franklin Life Insurance Company requesting that the beneficiary in this policy be changed to Myrtle Beatty. In due course this change was accomplished and Dr. Strickland delivered the policy to Myrtle Beatty.

There is some evidence in the record that Myrtle Beatty returned the policy to Dr. Strickland sometime in 1936 and, after keeping it a while, he returned it to her unchanged. The premiums on the policy were payable quarter-annually and were paid by Dr. Strickland up to the time of his death, which occurred by suicide on July 1, 1936.

Mrs. Strickland knew nothing of the change in the beneficiary of the insurance policy until after Dr. Strickland's death. In the fall of 1935 Dr. Strickland filed a divorce suit against his wife. She filed answer in that suit. Considerable testimony was taken but the suit stood undisposed of at the time of Dr. Strickland's death.

When Mrs. Strickland learned of the change in the beneficiary named in the policy she brought suit, praying "that the defendants may be required to make a full, true and correct answer to this Bill of Complaint, but not under oath, answer under oath being hereby waived; that a tem-

porary injunction be issued enjoining the payment of the proceeds of the said insurance policy to the said defendant Myrtle Beatty; that the said Myrtle Beatty be enjoined from transferring and assigning said insurance policy to anyone; that by a mandatory injunction the said Myrtle Beatty be required to deliver up and surrender to your Oratrix the said policy of insurance; that upon final hearing of this cause that your oratrix have a permanent injunction forever enjoining payment of said proceeds of the said insurance policy to the said Myrtle Beatty; and forever enjoining the said Myrtle Beatty from transferring and assigning said insurance policy to anyone, and that said mandatory injunction requiring the said Myrtle Beatty to deliver up said policy of insurance to your Oratrix be made permanent; that the beneficiary endorsed upon the said insurance policy, to-wit, the said defendant Myrtle Beatty, be canceled and eliminated therefrom and that said insurance policy be reinstated in its original form by naming and recognizing your Oratrix as the sole beneficiary therein; that an accounting may be had and taken by or under direction of this Court to determine the amount due on said insurance policy by the defendant, Franklin Life Insurance Company, and the said defendant, Franklin Life Insurance Company be ordered to pay the proceeds of the said life insurance policy to your Oratrix."

Grounds alleged for the relief prayed for were in effect that at the time of the change of the beneficiary named in the policy Dr. Strickland had become an addict of the drug habit; that he had become enamored of Myrtle Beatty and that Myrtle Beatty had acquired an undue influence over Dr. Strickland which she exercised and thereby procured the change, having herself made the beneficiary of the insurance policy, and that Dr. Strickland continued the use of drugs and continued under the domination and influence of

Myrtle Beatty from the time Myrtle was named as bene-
ficiary of the insurance policy until the time of Dr. Strick-
land's death, and that the use of opiates and drugs finally
resulted in his committing suicide.

The Chancellor entered a decree in favor of Mrs. Strick-
land in the following language:

"The above cause came on to be further heard upon the
pleadings, stipulation of counsel representing the plaintiff,
Ruby Strickland, and the defendant, Myrtle Beatty, and the
testimony taken before the Court, and was argued by coun-
sel, and thereupon, upon consideration thereof, the Court
doth find the equities to be with the plaintiff, Ruby Strick-
land, and that she is entitled to the fund heretofore paid
into the registry of this Court by Franklin Life Insurance
Company, a corporation, under an order and decree of the
Court requiring the plaintiff, Ruby Strickland, and the de-
fendant Myrtle Beatty, to interplead in this cause that it
may be ascertained and determined to whom said money
belongs, such fund, after the payment of certain amounts
heretofore allowed by the Court, being $4336.84. It is,
therefore, ordered, adjudged and decreed

"That the said sum of $4336.84, after deducting the costs
of this suit, belongs to and is the property of the plaintiff
Ruby Strickland.

"It is further ordered, adjudged and decreed that the
claim of the said Myrtle Beatty, as set forth in her answer
to the original bill of complaint filed herein and in any por-
tion of her answer to the cross bill of interpleader filed
herein, if relevant, be and the same is hereby dismissed.

"It is further ordered, adjudged and decreed that the
Clerk of this Court pay out of the said fund now on hand
all legal costs of this proceeding, to be taxed by the Clerk
of this Court, and that after paying all of such costs he pay

over to the plaintiff, Ruby. Strickland, the balance remaining in the registry of the Court.

"Done, Ordered, Adjudged and Decreed in Chambers at Madison, Florida, this 15th day of May A. D. 1937."

There were no particular findings of facts stated by the Chancellor but we find in the record ample evidence to support the conclusion that Dr. Strickland had become an addict to the drug habit long before his death and there is evidence to support the conclusion that he acquired that habit before the change in beneficiary in the insurance policy involved.

There is ample evidence to show that Myrtle Beatty occupied a relationship of confidence and trust with Dr. Strickland. It shows that she was present, at least, when the application was made in writing for change in the beneficiary and she testified that her sister witnessed Dr. Strickland's signature to the application for such change. There is evidence to show that she endeavored to have Dr. Strickland make a change in her favor in the beneficiary of another policy and that Dr. Strickland endeavored to get hold of that policy, which was in possession of his wife, for the purpose of making such change but failed to get possession of the policy.

The evidence shows conclusively that there was an unholy alliance between Dr. Strickland and Myrtle Beatty and the record shows that Myrtle Beatty exercised a controlling influence over the acts and doings of Dr. Strickland.

In 29 American & English Encyclopedia of Law, 2nd Ed., 130, it is said:

"Man and Mistress.—Transactions *Inter Vivos* between parties living in llicit sexual relations where the consideration is inadequate or wanting altogether are generally presumed *prima facie* to have resulted from the practice of undue influence on the part of the one deriving the advar-

tage. And this is especially true where natural objects of bounty are excluded and the person on whom it is alleged the undue influence is exercised is aged and afflicted, or is impaired in mind and body by dissipation."

The rule of law which is applied to the matter of undue influence in the execution of wills applies in cases of this sort.

Redfearn on Wills and Administration of Estates in Florida, page 60, Sec. 46, has defined "undue influence" in the following well chosen language:

"Influence to be undue, so as to invalidate a will, must amount to fear, over-persuasion, force or coercion to the extent of destroying the free agency and will power of the testator and must be operative on the mind of the testator at the time the will is executed. In such a case, the will does not speak the wishes of the testator but those of the person exercising the undue influence. A will procured through fraud is invalid, but fraud and undue influence are not identical. Fraud defeats the true wishes of the testator by deception, while undue influence subjugates his will and coerces him into acting contrary to his desires. Fraud is practiced through misrepresentations and deceit; while undue influence may sometime savor of deceit, it may be exerted without any actual frauds being perpetrated on the testator and without any misrepresentations being made to him."

The record warrants the conclusion that the relations between Dr. Strickland and Miss Beatty were those not only of a legitimate confidential nature but were also those of lover and mistress.

Things which are of general knowledge must be presumed to be known to the courts and we may, therefore, take judicial cognizance of the fact that when a married man, past middle age, becomes enamored of a young woman to

such extent that he is willing to abandon his family that he may take up and pursue more intimate relations with the woman who, in nearly all such instances, is younger than his wife, and when such younger woman occupies a position of trust and confidence in his business affairs, it becomes almost universally true that the wish of the mistress becomes the law of the lover. That in common parlance she can "twist him about her finger at will" or "make him jump through the loop" or "come and go at her beck and call;" that her mind instead of his controls his conduct and that this is true, although the lover may not be an addict of the drug habit, but if he happens to be a drug addict such condition is quite certain to accentuate his weakness and render the influence of the mistress more potent.

Doubtless there have been and are some splendid women who unfortunately love not wisely, and too much, but who never take advantage of the insidious influence which they could each wield over the mind and conduct of him who is the object of her affection, who have no desire to wreck a home or to cause discord therein.

It has been said that "when a man finds himself stealing his wife's potted plants and carrying them off to another woman he is losing his mental equilibrium and it is time for him to stop." Undoubtedly, one may become so deranged by the influence of illicit love and sexual indulgence as to disregard all moral obligations, all family ties and all respect for social standards. In such conditions, one is subject to the will of the paramour.

In Howard v. Farr, 115 Minn. 86, 131 N. W. 1071, the court said:

"To constitute undue influence the mind must be so controlled or affected by persuasion or pressure, artful or fraudulent contrivances, or by the insidious influence of persons in the close confidential relations with him that he

is not left to act intelligently, understandingly and voluntarily, but subject to the will or purpose of another."

We approve that statement; and here we have a case where a young woman whom the evidence indicates had become the mistress of a man more than 45 years of age; the man had become so enamored of the woman as to be willing to give up his family for her; the woman occupied a relation of confidence and trust in his business affairs and was his daily associate. The evidence shows that from the time this relationship began the attitude of the man toward his family changed; that whereas he had been a loving and indulgent husband and father he became careless and negligent toward his family and to a like degree became more attentive and considerate of his confidential helper and mistress; that as a result of the insidious influence of this woman he attempted to so change the beneficiary of an insurance policy that upon his death the proceeds of the policy would enure to his mistress instead of to his wife.

Following the holding of a majority of the court in our opinion in the case of Gardiner v. Goertner, 110 Fla. 377, 149 Sou. 186, it appears to us that there was sufficient evidence of undue influence to invalidate the attempted change in beneficiary without any consideration of the evidence, to which we do give great weight, that the insured was affected by reason of being an addict of the drug habit.

On the whole record we find no reversible error and, therefore, the decree appealed from is affirmed.

So ordered.

. Terrell, C. J., and Thomas, J., concur.

Whitfield, P. J., and Brown and Chapman, J. J., concur in the opinion and judgment.