346 So.2d 544 (1976)
Stephen L. DUKES, Sadie Dukes, and Barbara A. Albrittson, Appellants,
v.
Allie N. DUKES, Appellee.
No. Z-131.
District Court of Appeal of Florida, First District.
September 7, 1976.
Rehearing Denied October 8, 1976.
Martin S. Page of Jopling, Darby, Peele & Page and Marlin M. Feagle, Lake City, for appellants.
Frank M. Gafford and Ronald H. Cole, Lake City, for appellee.
LEE, THOMAS E., Associate Judge.
This appeal is before us on the question of the validity of the execution of a change of beneficiary form had by the deceased with Prudential Insurance Company of America. In the Trial Court, in a non-jury trial, commenced by the appellee (Allie N. Dukes) against Prudential Insurance Company of America for the payment of the 1/4 th interest in the policy on the life of Winton L. Dukes, deceased, which originally contained the names of appellee, his children who are the appellants herein (Stephen L. Dukes and Barbara A. Albritton), and his step-mother, Sadie Dukes, was changed to reflect only the appellants in equal shares. The lower court ordered that the change of beneficiary form was invalid as the deceased, Winton L. Dukes, was mentally incompetent at the time the form was executed (October 16, 1971). The sole question for our determination is whether or not the trial court erred in its finding that the insured was mentally incompetent at the time he executed the form.
FACTUALLY, In March, 1963 Prudential insured the life of Winton L. Dukes and named as beneficiaries therein in equal shares, appellee, Allie N. Dukes, wife, his children the appellants Stephen L. Dukes and Barbara A. Albritton, and his step-mother, Sadie N. Dukes. On October 16, 1971, Winton executed a change of beneficiary from and named appellants as beneficiaries in equal shares of the said policy eliminating Allie N. Dukes, wife, therefrom. The insurance company, upon learning of the legal dispute paid 3/4ths of the insurance proceeds to appellants, Stephen L. Dukes, Barbara Albritton and Sadie L. Dukes, and withheld 1/4th under the notice of contest, insured having died on November 16, 1971. Prudential deposited the remainder of the insurance proceeds into the registry of the Court and was permitted to be dismissed from this cause.
The record reveals that on August 9, 1971 in Lake Shore Hospital, Lake City, Florida, Winton was found to have had a tumor on the lobe of his right lung and after discharge, without treatment, he was referred by his physician, Dr. B.E. McRae, Jr., to Shands Teaching Hospital, in Gainesville, and on August 23, 1971, a brain tumor was also discovered. The lung tumor having been removed Mr. Dukes was released from Shands on September 2, 1971. On September 6, 1971, he was re-admitted to Shands Hospital and on September 8, 1971, the brain tumor was removed. Both of the *545 tumors were malignant. Mr. Dukes was discharged from Shands Hospital on September 15, 1971, leaving him without the ability to speak. On October 16, 1971, Mr. Dukes' attorney visited with him at the Dukes residence (at the request of Barbara Albritton and Stephen L. Dukes) for the purpose of having some documents executed including the disputed change of beneficiary form. The attorney had taken his secretary along, together with a long time friend of the deceased, a Mr. Harvey Dennis. Mr. Stephen Dukes also was in the home at the time. The record reflects that the attorney was assured of Mr. Winton L. Dukes' mental capability to know his attorney and that his faculties were such that he was oriented as to place and time. The disputed form was signed with an "x" and properly witnessed. On October 19, 1971, three days after the execution of the change of beneficiary form, the deceased saw Dr. Joseph C. Cauthen as an out patient at Shands Hospital. The record also reveals that at this time Winton had difficulty in speaking but Drs. Cauthen and McRae testified Winton was able to express his thoughts and needs by the use of hands or nodding of head gestures. Mr. Dukes died on November 16, 1971. Subsequently, the litigation commenced and the cause was tried without a jury.
The record reveals that the Court was able to observe the original beneficiaries' manner and demeanor at the non-jury trial and this constituted the only live testimony taken by the Court. The transcribed testimony of the attorney and two treating physicians was reviewed by the Court.
Generally speaking, a judgment of the Trial Court comes to the Appellate Court clothed with the presumption of correctness and the appellants have the burden of showing error. Phipps v. Sheffman, Fla. App., 211 So.2d 598 and Jovanovich v. Aeor-Tec., Inc., Fla.App., 277 So.2d 555. As in the cited cases the presumption is slight where the trial Judge used the same tools as the Appellate Court uses; that is sworn transcribed testimony. The Appellate Court and the Trial Court are "on a par" with each other because each have used their records on which to base a final decision. We also recognize that the Appellate Courts are loathe to reverse a Trial Judge who has had the opportunity to observe the manner and demeanor of live witnesses. See Julian v. Julian, Fla.App., 188 So.2d 896. In the Julian case that "there is no presumption or at best only a slight presumption in favor of the correctness . . Where a trial Judge bases his Final Decree upon the written pleadings and transcribed testimony and exhibits, the Appellate Court is in the same position in examining the record as is the Trial Judge, and a presumption as to determination of evidentiary matters is not as strong as when the Judge, as the trier of the facts, personally hears the witnesses." L & S Enterprises, Inc. v. Miami Tile & Terrazzo Inc., Fla.App., 148 So.2d 299. See also Davis v. Wigfall, Fla., 70 So.2d 908.
Accordingly we reverse.
BOYER, C.J., concurring specially.
McCORD, J., dissents, without opinion.
BOYER, Chief Judge, concurring specially.
I concur in reversal based upon the authorities and reasoning recited in the opinion authored by Judge Lee. On October 16, 1971, or thereabouts, the attorney mentioned in the foregoing opinion, accompanied by his secretary and a friend of the deceased went to the home of the deceased and upon entering his bedroom found him lying in bed. He indicated by motions and gestures a desire to be helped to a sitting position. The attorney engaged in a conversation with the deceased for the purpose of determining his ability to understand, communicate and respond. The deceased would make hand and head gestures and would mumble and make other vocal sounds in order to communicate. Having satisfied himself that the deceased was capable of understanding and communicating, the attorney read and explained the documents which had been prepared which documents *546 were thereupon signed by a mark and, as recited in the foregoing opinion, properly witnessed. With regard to the change of beneficiary form, the attorney asked the deceased whether it was his intention to exclude his wife from participation whereupon the deceased evidenced his approval with a nod and an audible noise. Three days later the deceased was seen by a physician as an out patient at Shands. That physician testified that although the deceased experienced difficulty in expressing his thoughts he could nevertheless communicate his needs.
Florida recognizes a presumption of sanity and mental competence of a person at the time of the execution of an instrument. (Schaefer v. Voyle, 88 Fla. 170, 102 So. 7 and Travis v. Travis, 81 Fla. 309, 87 So. 762. See also Beatty v. Strickland, 136 Fla. 330, 186 So. 542.) The burden of overcoming such presumption rests upon the party attacking the sanity or mental competence at the time of the execution of the instrument. Mere physical feebleness or mental weakness will not authorize a court to set aside a contract or other executed document on the ground of mental incapacity unless the evidence demonstrates that such mental or physical weakness amounted to an inability to comprehend the effect and nature of the transaction. (Murrey v. Barnett National Bank of Jacksonville, Sup.Ct.Fla. 1954, 74 So.2d 647 and Davis v. Wigfall, Sup.Ct.Fla. 1954, 70 So.2d 908) An examination of the record sub judice reveals that there was insufficient evidence to overcome the presumption of competency.