Virginia COBB, Appellant,

v.

Willie Mae JUSTICE, Appellee.

No. 10–96–212–CV.

Court of Appeals of Texas, Waco.

Oct. 8, 1997.

Rehearing Overruled Oct. 29, 1997.

Michael L. Scanes, Keith C. Cameron, Naman, Howell, Smith & Lee, P.C., Waco, for appellant.

Vance Dunman, Jr., Waco, for appellee.

Before DAVIS, C.J., and CUMMINGS and VANCE, JJ.

## OPINION

DAVIS, Chief Justice.

A jury found that Willie Mae Justice unduly influenced T.J. Clark to change his will and life insurance beneficiary designation. However, the trial court awarded Justice a Judgment Non Obstante Veredicto ("JNOV"). Virginia Cobb now appeals claiming the trial court erred in finding no evidence of undue influence, in granting the JNOV, in overruling her Motion to Modify, Correct or Reform Judgment, and in finding that the jury's verdict of undue influence with regard to the life insurance beneficiary designation was immaterial. Because the evidence supports the jury's verdict, we will reverse the judgment and remand this cause to the trial court for entry of a judgment in accordance with the verdict.

## FACTUAL BACKGROUND

T.J. Clark was married to Ella Mae Clark, who predeceased him in 1992. Virginia Cobb was Ella Mae Clark's niece. Cobb lives with her parents in Waco, a few blocks from the Clark home. Willie Mae Justice was T.J. Clark's niece. She lives in Dallas.

Because Clark could not read or write, he relied upon Cobb to take care of his financial affairs for over 20 years. On July 22, 1993, Cobb assisted Clark in executing a will that granted Clark's daughter all of his vehicles and a life estate in his house with the remaining estate granted to Cobb. In 1994, Clark also made Cobb the beneficiary of his three life insurance policies. Although he bragged to others about Cobb's handling of his financial concerns, Clark was not free from worry regarding the disposition of his property after his death. Cobb's mother, a long-time neighbor and sister of Clark's deceased wife, testified that Clark told her about how his niece, Justice, bothered him about his will. In fact, Clark told Cobb's mother not to let Justice use the extra key to his house because things would be missing when Justice entered the house without him there.

On June 1, 1995, Dr. Richard Kleiman determined that Clark was close to death from prostate and lung cancer. To alleviate some of the pain, Dr. Kleiman increased Clark's intake of morphine. Dr. Kleiman testified that a person who is close to dying of cancer and is on morphine can become confused. In addition to the increased morphine, Clark required oxygen from a tank to help him breathe. During the last days of Clark's life, a neighbor testified that Clark was using his oxygen tank all the time. Also, Clark's appetite waned during this time and his weight declined significantly.

While in this physical condition, Clark felt nervous when surrounded by a large group of people. Nonetheless, Justice came with four others to visit Clark on June 2. Soon after the group's arrival, Cobb brought a lunch plate for Clark. Although Clark could not read, Justice's sister phoned Cobb at home and told her that Clark wanted to see his will. Cobb refused to retrieve the will from her office while on vacation, but told Justice's sister the contents of the will. Justice's sister then attempted to schedule an appointment with an attorney to write another will for Clark. After many calls to attorneys out of the phone book without success, a women dropped by with some soup for Clark. She told the group that Clark had a friend who was an attorney. Only then did Clark give the group the name of the attorney. This attorney agreed to meet them that afternoon.

Within three hours of arriving in Waco, the group had Clark loaded in their van and on the way to meet this attorney. Despite Clark's poor health and breathing troubles, the group failed to put his oxygen tank in the van. Justice's sister indicated that Clark would be fine driving around in the heat of the day without his oxygen tank by just turning the air conditioner vent on him. After meeting with the attorney, Clark changed his will to leave his automobiles to his daughter and everything else to Justice. The group then took Clark to the insurance company to change the beneficiary designation from Cobb to Justice. Although he previously bragged about Cobb's handling of his affairs, Clark told an insurance company employee that he was changing beneficiaries because he was displeased that Cobb did not pay a bill. When the attorney discovered an error in the newly executed will, Clark was

returned to the attorney's office to re-execute an amended will. Thereafter, the group went to Clark's bank to withdraw all of his money and close the account. However, that account had already been closed. After taking Clark home, Justice and the others returned to Dallas.

Cobb's father checked on Clark that evening and found that his four hour excursion with Justice's group left him out of breath. The next day, Clark was taken by ambulance to the emergency room suffering from severe shortness of breath. He was comatose and in marked respiratory distress. Clark died a few hours later, during the early morning hours of June 4. The next morning, Justice took Clark's newly executed will to the attorney's office to have it offered for probate.

Cobb's first three points attack the trial court's actions in awarding the JNOV to Justice. In her first point, Cobb claims the trial court erred in finding no evidence supports the jury's verdict that undue influence was exerted over Clark. Her second point complains the court erred in disregarding the jury's findings and granting the JNOV. Cobb's third point alleges the court erred in overruling her Motion to Modify, Correct or Reform Judgment by which she sought to reinstate the jury's verdict.

### THE STANDARD OF REVIEW

We will uphold a trial court's JNOV only if no evidence supports the jury's verdict. *Mancorp, Inc. v. Culpepper,* 802 S.W.2d 226, 227 (Tex.1990); *Fisher v. Evans,* 853 S.W.2d 839, 841 (Tex.App.—Waco 1993, writ denied). If more than a scintilla of evidence exists supporting the jury's verdict, we will reverse a JNOV. *Mancorp,* 802 S.W.2d at 228. In determining whether more than a scintilla of evidence exists, we review only the evidence supporting the jury's verdict and disregard all evidence and inferences to the contrary. *Id.* at 227. Thus, we "must consider the evidence and inferences as they tend to support *the verdict* and not with a view toward supporting *the judgment.*" *Id.* at 228. More than a scintilla of evidence exists if the record reveals some probative evidence to support the verdict, *"no matter how small." Ellis County State*

*Bank v. Keever,* 888 S.W.2d 790, 801 (Tex. 1994) (emphasis added).

### UNDUE INFLUENCE

"Influence is considered undue when the free agency of the [person] is destroyed and a [document] is produced that expresses the will of the one exerting the influences rather than the [person's] true wishes." *Estate of Davis,* 920 S.W.2d 463, 465 (Tex.App.—Amarillo 1996, writ denied). In deciding whether undue influence has been exerted, the contestant must prove:

(1) the existence and exertion of an influence;

(2) that the influence operated to subvert or overpower the person's mind when executing the document; and

(3) that the person would not have executed the document but for the influence.

*Rothermel v. Duncan,* 369 S.W.2d 917, 922 (Tex.1963).

The contestant bears the burden of proving the elements of undue influence by a preponderance of the evidence. *Evans v. May,* 923 S.W.2d 712, 715 (Tex.App.—Houston [1st Dist.] 1996, writ denied). The contestant may prove these elements by circumstantial as well as direct evidence. *Rothermel,* 369 S.W.2d at 922.

Our Supreme Court stated in *Rothermel:*

The exertion of influence that was or became undue is usually a subtle thing and by its very nature usually involves an extended course of dealings and circumstances. Thus, it is settled that the elements establishing undue influence may be proved by what is known as circumstantial, as well as by direct, evidence. In the absence of direct evidence all of the circumstances shown or established by the evidence should be considered; and even though none of the circumstances standing alone would be sufficient to show the elements of undue influence, if when considered together they produce a reasonable belief that an influence was exerted that subverted or overpowered the mind of the [person] and resulted in the execution of the [document] in controversy, the evi-

dence is sufficient to sustain such conclusion.

*Id.* (citations omitted). The jurors are in the best position to sift through the direct and circumstantial evidence presented concerning this subtle concept. The jury is vitally important in the determination of whether undue influence was exerted to the degree required and with the result alleged when probative evidence is introduced which tends to show undue influence.

 Under the first element of undue influence, our inquiry focuses upon the relationship between the person who executed the document, the contestant, and the party accused of exerting undue influence. *Rothermel*, 369 S.W.2d at 923. "In determining whether undue influence was in fact exerted, we assess the opportunities existing to exert the influence, the circumstances surrounding the execution of the document, the existence of any fraudulent motive, and whether the testator was habitually subjected to the control of the party accused." *Estate of Davis*, 920 S.W.2d at 466.

 In this case, Cobb's mother testified that Clark told her Justice "was worrying him" about the contents of his will. She testified that Clark once called her in the middle of the night to complain that Justice was picking his brain about his testamentary dispositions. Additionally, Clark's neighbors testified about seeing him covered with lipstick after some of Justice's visits. Also, soon after Justice's group arrived, her sister phoned Cobb saying that Clark wanted to see his will. This is an illogical request because Clark could not read. The jury could infer from this that Justice's group was discussing the contents of Clark's will. Thus, some evidence exists that Justice exerted an influence over Cobb.[1]

 The second element requires proof that the effective operation of the influence subverted or overpowered the mind of the person executing the documents. "This in-

quiry focuses upon the [person's] mental or physical incapacity to resist...." *Id.* at 466–67. At the time he executed the documents in question, Clark was near death from cancer. His doctor increased his dosage for morphine which may have made him confused. Additionally, large groups made Clark nervous and disturbed his desire for quiet. Justice arrived at Clark's house with a group of people that became loud and disorderly. Under these facts, someone in Clark's condition was more susceptible to having his mind subverted or overpowered.

Finally, the third element is "the execution of a document which the [person] would not have made but for the alleged influence." *Id.* at 467. Clark trusted Cobb to take care of his financial affairs for over 20 years. He told an employee of the insurance company that Cobb was not taking care of his business. Clark seemed to develop this false idea after Justice's group arrived at his house on June 2. Clark was hurriedly taken around town without his oxygen to change financial plans that had been in place for years. On its face, the naming of Justice, instead of Cobb, as beneficiary is not unnatural, as one niece is benefitted over another. However, the circumstances of this case, as a whole, indicate that Justice unduly influenced Clark to change his will and life insurance beneficiary designation.

For these reasons, we sustain Cobb's first, second and third points.

### THE LIFE INSURANCE BENEFICIARY DESIGNATION

In her fourth point, Cobb argues that the court erred in determining that the jury's finding of undue influence with regard to Clark's life insurance beneficiary designation is immaterial. Justice responds that the court's decision is correct because the charge did not inquire who or what exerted the undue influence over Clark; because no evi-

---

1. Not every influence exerted over a person is undue. "[O]ne may request or even importune and entreat another to execute a favorable dispositive instrument, but unless the importunities and entreaties are shown to be so excessive as to subvert the will of the maker they will not taint the validity of the instrument with undue influence." *Curry v. Curry*, 153 Tex. 421, 428, 270 S.W.2d 208, 212 (1954); *Estate of Davis*, 920 S.W.2d 463, 466 (Tex.App.—Amarillo 1996, writ denied); *Mason v. Mason*, 369 S.W.2d 829, 838 (Tex.Civ.App.—Austin 1963, writ ref'd n.r.e.).

dence exists to support the finding; and because Texas has not recognized the right of a former beneficiary to attack a change of beneficiary by the insured on the basis of undue influence.

 A trial court may grant a JNOV if a contested finding is immaterial. *Spencer v. Eagle Star Ins. Co. Of America*, 876 S.W.2d 154, 157 (Tex.1994); *C & R Transp., Inc. v. Campbell*, 406 S.W.2d 191, 194 (Tex. 1966). A finding is immaterial when the question "should not have been submitted, or when it was properly submitted but has been rendered immaterial by other findings." *Spencer*, 876 S.W.2d at 157.

 Justice first asserts that the finding of undue influence is immaterial because the question at issue did not inquire who or what exerted the undue influence over Clark. Rule 324(c) requires an appellee to bring forward by cross-point any grounds upon which a JNOV can be affirmed. TEX.R. CIV. P. 324(c). The failure to do so waives any grounds not so raised. *Id.* Because Justice has failed to raise a cross-point attacking the propriety of the court's question on undue influence, she has waived this contention. *Burns v. Resolution Trust Corp.*, 880 S.W.2d 149, 151 (Tex.App.—Houston [14th Dist.] 1994, no writ).

Justice next argues that the trial court properly determined the finding to be immaterial because no evidence exists in the record to support it. We have already decided in our review of Cobb's first point that sufficient evidence exists in the record to support this finding.

Finally, Justice argues that Texas courts have not recognized the right of a beneficiary to attack a change of beneficiary by the insured on the basis of undue influence. She relies on Alabama and California authorities to support her contention. *Owens v. Coleman*, 520 So.2d 514 (Ala.1987); *McRee v.*

*Russell*, 239 Ala. 343, 194 So. 827 (1940); *New York Life Ins. Co. v. Dunn*, 46 Cal.App. 203, 188 P. 1028 (1920). Justice suggests that our Supreme Court will follow these authorities when presented with this question. We disagree.

The Fort Worth Court of Civil Appeals has held that a prior beneficiary has standing to sue over a change of beneficiary brought about as a result of undue influence. *Westbrook v. Adams*, 17 S.W.2d 116, 120 (Tex.Civ. App.—Fort Worth 1929), *aff'd on other grounds sub nom. Adams v. Bankers' Life Co.*, 36 S.W.2d 182 (Tex. Comm'n App.1931, holding approved).

Other Texas courts have reviewed cases in which a former beneficiary brought similar suits. The propriety of the former beneficiary's standing was not questioned in these cases. *Manahan v. Meyer*, 862 S.W.2d 130, 138–39 (Tex.App.—Houston [1st Dist.] 1993, writ denied); *Cubine v. Morgan*, 288 S.W.2d 537, 540 (Tex.Civ.App.—Amarillo 1956, writ dism'd); *Martin v. Martin*, 11 S.W.2d 347, 348 (Tex.Civ.App.—El Paso 1928, writ dism'd); *Griggs v. Griggs*, 220 S.W. 363, 363–64 (Tex.Civ.App.—El Paso 1920, no writ); *Turner v. Turner*, 195 S.W. 326, 328 (Tex. Civ.App.—Galveston 1917, no writ); *Maxey v. Franklin Life Ins. Co.*, 164 S.W. 438, 439 (Tex.Civ.App.—Fort Worth 1914, writ ref'd); *Hazard v. Western Commercial Travelers' Ass'n*, 54 Tex.Civ.App. 110, 116 S.W. 625, 626 (1909, no writ).

Only one Texas court has decided that the prior beneficiary cannot bring suit in this manner. *Goeke v. Baumgart*, 92 S.W.2d 1047, 1051 (Tex.Civ.App.—Beaumont 1936, no writ). Moreover, a substantial majority of the other states which have addressed this issue have affirmed the right of a former beneficiary to attack a change of beneficiary on the basis of undue influence.[2]

By the majority rule, where a change of beneficiary has been accomplished by ...

---

2. Our research also reveals that a majority of the states which have considered this issue have affirmed the right of a prior beneficiary to pursue such a suit. Besides Texas, fourteen states have done so. *See Tracy v. Prudential Ins. Co. of America*, 34 Del. Ch. 207, 101 A.2d 321, 323 (1953); *Beatty v. Strickland*, 136 Fla. 330, 186 So. 542, 544 (1939); *Cason v. Owens*, 100 Ga. 142, 28 S.E. 75, 76–77 (1897); *Munroe v. Beggs*,

91 Kan. 701, 139 P. 422, 423–24 (1914); *Daugherty v. Daugherty*, 152 Ky. 732, 154 S.W. 9, 10 (1913); *North American Life & Cas. Co. v. Butler*, 623 A.2d 180, 182 (Me.1993); *Lynn v. Magness*, 191 Md. 674, 62 A.2d 604, 607 (1948); *Savage v. McCauley*, 301 Mass. 162, 16 N.E.2d 639, 641 (1938); *In re Estate of Erickson*, 202 Mich.App. 329, 508 N.W.2d 181, 182–83 (1993); *Wherry v. Latimer*, 103 Miss. 524, 60 So. 563, 564 (1913);

undue influence practiced by the substitute beneficiary, the rights of the original beneficiary are not cut off by the attempted substitution. Equity may entertain jurisdiction of a suit by an original beneficiary to set aside a change to a substituted beneficiary on the ground of ... undue influence and to enjoin the payment of the polic[y] to the latter. The original beneficiary may also sue the second beneficiary for damages, or charge the second beneficiary as constructive trustee of the proceeds.

4 LEE R. RUSS & THOMAS F. SEGALLA, COUCH ON INSURANCE § 60:72, at 60–132 to 60–134 (3d ed.1996).

Although our Supreme Court has not addressed this issue, it has affirmed the right of a former beneficiary to contest a change of beneficiaries on the basis that the insured was incompetent at the time he executed the change. *Tomlinson v. Jones,* 677 S.W.2d 490, 492–93 (Tex.1984); *accord Martin,* 11 S.W.2d at 348; *Turner,* 195 S.W. at 328.

■ We believe that the correct rule of law is that stated by the Fort Worth court and by a majority of the other jurisdictions which have addressed this issue. Accordingly, we hold that a former beneficiary may bring suit to contest a change of beneficiary on the basis that the change was accomplished as a result of undue influence exerted against the insured.

Because Justice has failed to preserve her complaint that the undue influence question was defective, because sufficient evidence ex-

ists to support the jury's finding of undue influence, and because Cobb has standing to contest the beneficiary change on the basis of undue influence, we sustain Cobb's fourth point.

Entering the appropriate judgment in this cause may require an additional hearing to ensure that the judgment comports with the pleadings, the evidence, and the verdict. We believe the trial court is in the best position to take such action as is necessary to render the correct judgment. Accordingly, we reverse the judgment of the trial court and remand this cause for the entry of a judgment in accordance with the jury's verdict and this opinion.

*New York Life Ins. Co. v. Wright,* 229 Mo.App. 950, 88 S.W.2d 403, 408 (1935); *Goff v. Weeks,* 246 Neb. 163, 167, 517 N.W.2d 387, 391 (1994); *Webster v. Welch,* 57 A.D. 558, 68 N.Y.S. 55, 58–59 (1901); *Holmes v. Morgan,* 135 Or.App. 617, 623–24, 899 P.2d 738, 741–42 (1995).

Eight others have reviewed similar cases without questioning the propriety of the former beneficiary's standing. *Carpenter v. Horace Mann Life Ins. Co.,* 21 Ark.App. 112, 730 S.W.2d 502, 507–08 (1987); *Mountain States Tel. & Telegraph Co. v. DiFede,* 780 P.2d 533, 537–38 (Colo.1989); *Witt v. Jones,* 111 Idaho 165, 722 P.2d 474, 477–78 (1986); *Trust Co. of Chicago v. Saloman,* 338 Ill.App. 658, 88 N.E.2d 334, 334–35 (1949); *American Family Life Ins. Co. v. Noruk,* 528 N.W.2d 921, 925 (Minn.App.1995); *Matthews v. James,* 88 N.C.App. 32, 362 S.E.2d 594, 598–99 (1987); *Proctor v. Royal Neighbors of America,* 172 Okla. 529, 45 P.2d 734, 736 (1935); *Kaplan*

*v. Copeland,* 183 Va. 589, 32 S.E.2d 678, 679 (1945).

Six states have concluded that the prior beneficiary lacks standing to sue in such cases. *Owens v. Coleman,* 520 So.2d 514, 516 (Ala.1987); *New York Life Ins. Co. v. Dunn,* 46 Cal.App. 203, 188 P. 1028 (1920); *Bills v. Boettcher,* 116 Ind.App. 631, 65 N.E.2d 495, 498 (1946); *Brown v. Grand Lodge of Iowa,* 80 Iowa 287, 45 N.W. 884, 885–86 (1890); *Alfsen v. Crouch,* 115 Tenn. 352, 89 S.W. 329, 330 (1905); *Cade v. Head Camp, Pacific Jurisd.,* 27 Wash. 218, 67 P. 603, 604–7 (1902).

*See also* 4 LEE R. RUSS & THOMAS F. SEGALLA, COUCH ON INSURANCE § 60:72, at 60–132 to 60–135 & nn. 4–11 (3d ed.1996); Annotation, *Avoidance on Ground of Fraud, Mistake, Duress, or Mental Incompetency of Otherwise Validly Effected Change of Beneficiaries of Insurance Policies,* 105 A.L.R. 950, 960–61 (1936).