**Juan M. ORTIZ and Gem Homes, Inc., Appellants,**

v.

**FLINTKOTE COMPANY d/b/a Genstar Building Materials, Appellee.**

**No. 13–87–468–CV.**

Court of Appeals of Texas, Corpus Christi.

Nov. 30, 1988.

Rehearings Denied Dec. 30, 1988.

Edward O. Garcia, Corpus Christi, for appellants.

James F. McKibben, Jr., Carlos Villarreal, Corpus Christi, for appellee.

Before NYE, C.J., and BENAVIDES and DORSEY, JJ.

## OPINION

NYE, Chief Justice.

Appellants, Juan Ortiz and Gem Homes, Inc., sued appellee, Flintkote Company d/b/a Genstar Building Materials, for damages under the DTPA and under sections 2.314–2.316 of the Texas Business & Commerce Code, alleging misrepresentation and breach of warranty.

The case was tried to a jury, which found, among other matters, that:

1) Defective wallboard manufactured by Genstar was the producing cause of damages to Gem Homes;

2) Genstar had reasonable opportunity to cure the problem, but knowingly failed to do so;

3) Gem Homes suffered damages of $21,000 in lost profits and $18,000 in additional insurance premiums and interest payments; and

4) Gem Homes was entitled to $50,000 in additional damages.

Upon motion by Genstar contending that Gem Homes had failed to prove up causation and damages, the trial court entered judgment for Genstar notwithstanding the verdict. Gem Homes now appeals, alleging nine points of error; Genstar alleges cross-points. We reverse and remand.

Gem Homes' primary complaint in this appeal is that the trial court's granting of Genstar's motion for judgment n.o.v. was improper because the evidence supports the jury's verdict. In taking up this matter, we address Gem Homes' first, second, fourth and seventh points of error and Genstar's first and fifth cross-points.

To affirm a judgment n.o.v., we must first determine that there is no evidence to support the jury's findings. *Navarette v. Temple Independent School District*, 706 S.W.2d 308, 309 (Tex.1986); *Trenholm v. Ratcliff*, 646 S.W.2d 927, 931 (Tex.1983). To determine whether there is any evidence upon which the jury could have based its verdict, we must review the evidence in the light most favorable to the verdict, considering only the evidence and inferences which support the verdict and rejecting the evidence and inferences to the contrary. *Williams v. Bennett*, 610 S.W. 2d 144, 145 (Tex.1980); *Miller v. Bock Laundry Machine Co.*, 568 S.W.2d 648, 649–650 (Tex.1977); Tex.R.Civ.P. 301. A trial court may not disregard a jury's answer merely because it is against the great weight and preponderance of the evidence. *Alm v. Aluminum Company of America*, 717 S.W.2d 588 (Tex.1986). The pertinent special issues and answers to be considered in deciding the propriety of the trial court's judgment n.o.v. are those dealing with causation and damages.

First, we examine whether there is any evidence in the record to support the jury's finding that Genstar's defective wallboard was the producing cause of damages to Gem Homes. (We note here that Genstar does not argue that Gem Homes failed to prove that the wallboard was indeed defective or that the wallboard at issue was not manufactured by Genstar). Juan Ortiz, president of Gem Homes and a named plaintiff, testified without contradiction that Gem Homes had contracts to build three houses for sale to specified buyers. He also testified that defective wallboard manufactured by Genstar had been unwittingly incorporated into the walls of these three houses and that, because of the defective wallboard, Gem Homes could not sell these houses to those with whom it had contracted nor to anyone else. Juan and his brother, Bert Ortiz, both testified that the walls and ceilings in all three houses had bubbled, blistered, peeled, and bowed. Curtis Heldenbrand, a Genstar representative, admitted that he saw problems with the wallboard. Bert Ortiz also testified that the defective wallboard was dangerous. Roland Vasquez, a witness with whom Gem Homes had contracted to build one of these houses testified that he had been willing to close the sale on the house but for the faulty wallboard. He further testified that "you could push on the wall and the sheetrock would move."

This evidence, considered in the light most favorable to the jury finding, is ample and is much more than a scintilla that the wallboard manufactured by Genstar was a producing cause of damages to Gem Homes. We sustain appellants' points of error one, two and four as to the issue of causation.

Genstar's cross-point five, however, challenges the jury finding of causation as being insufficiently supported by the evidence and against the great weight and preponderance of the evidence. We shall treat this only as an insufficient evidence point because appellant, not appellee, had the burden of proof on causation. *See Croucher v. Croucher*, 660 S.W.2d 55, 58 (Tex.1983).

In considering this point, we necessarily examine all of the evidence put forth on this issue. *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex.1965); *In Re King's Estate*, 150 Tex. 662, 244 S.W.2d 660, 661–62 (1951). *See Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex.1986) (opinion on reh'g). The evidence supporting Gem Homes' contention that Genstar's defective wallboard was the producing cause of its Gem Homes damages is set forth above.

There is also evidence contrary to the verdict; the question is whether it is sufficient to allow the trial court to ignore the jury's answer affirming causation.

Roland Vasquez, the witness who testified that he would have bought the house but for the wallboard, also testified that there were other problems which induced him to back out of the contract, to wit:

1) the living room was not sunken as per Mr. Vasquez' request;

2) the plumbing for the master bath came out into the master bedroom instead of the bathroom;

3) the garage was not the size specified to accommodate his boat;

4) a hole in a fiberglass shower was never repaired;

5) the siding was not properly placed; and

6) the patio slanted towards the house so as to cause flooding.

Moreover, Mr. Vasquez testified that Bert Ortiz told him that if he would have an attorney write a letter to Gem Homes complaining specifically about the wallboard, Mr. Vasquez would be better able to avoid his contract to buy the house.

This amounts to some evidence that perhaps Genstar's defective wallboard did not cause all of the damages to Gem Homes as alleged; however, we are obliged to overrule Genstar's cross point because, upon examination of all of the evidence presented on causation, we cannot hold that the evidence above greatly outweighs the evidence in support of the verdict, nor that the verdict as to causation is manifestly unjust. *Pool,* 715 S.W.2d at 635.

■ The next issue to be addressed is whether Gem Homes came forward with evidence of damages to support the verdict. Juan Ortiz and another brother, Martin Ortiz, both testified that Gem Homes had had to pay an additional $14,000.00 in interest on the interim financing of these houses, from the fall of 1984, when the sales collapsed, to April of 1985, when the lender foreclosed. Martin Ortiz testified that these figures had been calculated from bank statements Gem Homes received from the lender. They also testified that Gem Homes had had to pay $3,000.00 in additional insurance premiums and taxes because these houses could not be sold.

We encounter a problem here when we attempt to coordinate the evidence of these damages with the jury finding. The jury found that Gem Homes had had to pay a sum total of $18,000 for two things: 1) additional insurance premiums; and 2) interest payments. The only evidence concerning these items showed a total of $17,000.00 in damages for 1) insurance premiums; 2) interest payments; and 3) taxes. The evidence as to damages for additional insurance premiums was inextricably intertwined with that for taxes; however, no special issue was requested or submitted on the issue of taxes. The proof does not support an award of $18,000.00 for the two items (i.e. insurance and interest). This court is not at liberty to speculate as to what amount the evidence would support. We cannot make findings of fact; we can only "unfind" them. *Bellefonte Underwriters Insurance Co. v. Brown,* 704 S.W. 2d 742, 744–45 (Tex.1986); *City of Watauga v. Taylor,* 752 S.W.2d 199, 204 (Tex.App. —Fort Worth 1988, no writ). Points of error one, two, four and seven are sustained as to actual damages. Genstar also complains by crosspoint that there is insufficient evidence to support the jury's verdict on damages for additional interest and insurance. We agree.

■ Point of error five complains that the trial court erred in failing to submit to the jury issues on cost of repair and incidental damages, arguing that the evidence is sufficient to support a finding on these. First, we examine the issue of "incidental damages." Section 2.715 of the Texas Business and Commerce Code defines the buyer's incidental damages. This definition cannot be applied to this case. Furthermore, Gem Homes failed to specify which of the alleged damages it would categorize as "incidental damages." Point of error five is overruled insofar as it refers to incidental damages.

However, the trial court also refused to submit a special issue to the jury on cost of

repair. Two problems are involved here: (1) whether Gem Homes was legally entitled to a special issue on cost of repair and (2) whether evidence of cost of repair was adduced so as to support the submission of the special issue.

■ Genstar argues that cost of repair is not a proper measure of damages because the property is no longer owned by Gem Homes nor will the repairs be effected. The assertion is that to allow Gem Homes an award for cost of repair would result in a windfall for Genstar and that, if anything, Gem Homes is entitled only to damages proved for lost profits. Genstar cites no legal authority for this proposition, and we disagree with the stance. Cost of repair is an appropriate measure of damages in a case such as this, where repair can be effected without impairing the entire structure or expending sums in excess of the value of the structure. *Jim Walter Homes v. Valencia*, 679 S.W.2d 29, 38 (Tex.App.—Corpus Christi 1984), *aff'd as modified*, 690 S.W.2d 239 (Tex.1985); *Lanphier Construction Co. v. Fowco Construction Co.*, 523 S.W.2d 29, 41–42 (Tex.Civ.App.—Corpus Christi 1975, writ ref'd n.r.e.); *Greene v. Bearden Enterprises*, 598 S.W.2d 649, 653 (Tex.Civ.App.—Fort Worth 1980, writ ref'd n.r.e.).

■ Gem Homes owned three houses. These houses were found by the jury to be defective due to the poor quality of the Genstar wallboard. In general, profit is the gross proceeds of a business transaction less the costs of the transaction. *See Black's Law Dictionary* 1090 (5th ed. 1979). Cost of repair is not related to profit. Cost of repair is the amount it would cost to put the homes into the condition they would have been in had the wallboard been of merchantable quality. Cost of repair is a proper element of damages in this type of case.

■ In *Greene*, purchasers contracted with a builder for the construction and purchase of a triplex. As so often happens with construction contracts, the parties became dissatisfied with one another's performance and suit was had. In addressing the issue of whether cost of repair was an appropriate measure of damages, the trial court concluded that because the purchasers sold the triplex prior to trial, without remedying the defects, cost of repair was not an appropriate measure of damages. The appellate court disagreed, saying, "We are not troubled by this fact because even if the Greenes were still the owners of the triplex, there is no requirement recognized that they spend any recovery they may receive to make the repairs." *Greene*, 598 S.W.2d at 653. Thus, neither ownership of the property at the time of trial nor intent to perform the necessary repairs is relevant to a determination of whether Gem Homes was entitled to an issue on cost of repair. *See Luna v. North Star Dodge Sales, Inc.*, 667 S.W.2d 115 (Tex.1984).

In *Lanphier Construction*, the contractor sued the subcontractor for damages suffered by the contractor when paving material, laid by the subcontractor, proved to be defective. The jury awarded the contractor money for costs of repair as against the subcontractor who laid the asphalt. The jury also awarded the same amount to the subcontractor as against the supplier of the defective asphalt. The supplier, like Genstar, argued that cost of repair was an incorrect measure of damages. The court examined §§ 2.714(b), (c) and 2.715 of the Uniform Commercial Code and held that the supplier could have reasonably forseen that if the asphalt proved defective, it would have to be repaired. The same reasoning applies to the case we now address. Genstar should have reasonably foreseen that defects in its product would necessitate repair. Under the DTPA, a consumer can recover all of its actual damages. The courts have held this to be common law damages. *Brown v. American Transfer & Storage Co.*, 601 S.W.2d 931, 939 (Tex. 1980); *Jim Walter Homes, Inc. v. Mora*, 622 S.W.2d 878, 883 (Tex.App.—Corpus Christi 1981, no writ). Cost of repair is one element of common law damages. That Gem Homes failed to make the repairs is of no moment here. *Greene*, 598 S.W.2d at 653.

Finally, we note that there is evidence of cost of repair entitling Gem Homes to a

special issue on the element of damages. Martin Ortiz testified that it cost $21,000 to repair one house. Juan Ortiz testified that he analyzed the problem and that it would cost $22,000–$23,000 per house to repair them. He then described in detail what action would have to be taken to perform the repairs. This was ample evidence to support the submission of a special issue on cost of repair to the jury.

Furthermore, the deposition testimony of David Bott, erroneously excluded from evidence but brought before this court by bill of exception, provides evidence of cost of repair so as to entitle Gem Homes to a special issue. The trial court refused to admit Mr. Bott's deposition because it was not on file one day prior to trial. We have examined the procedural rules concerning depositions and their use at trial and can find no requirement that a deposition be on file one day prior to trial in order to be used at trial. The rule relied upon by the trial court is applicable only in situations involving a motion to suppress a deposition. *See* Tex.R.Civ.P. 207. We sustain Gem Homes' fifth point of error to the extent that it refers to the issue of cost of repair.

By way of cross-points two, three, four and seven, Genstar complains that the evidence was insufficient and inappropriate to predicate a finding of additional damages of $50,000.00. We agree.

The court's charge defines additional damages as an amount which may be awarded as an example to others and as a penalty or by way of punishment or as compensation for the inconvenience or expense of litigation, except attorney's fees, in addition to any amount which may have been found as actual damages. In response to Special Issue No. 9 the jury awarded Gem Homes $50,000.00 in additional damages.

Gem Homes alleged and proved breach of the implied warranty of merchantability. Exemplary damages, however, cannot be awarded in Texas for ordinary breach of warranty. *A.L. Carter Lumber Co. v. Saide*, 140 Tex. 523, 168 S.W.2d 629, 631 (1943); *Canon, U.S.A. v.* *Carson Map Co.*, 647 S.W.2d 321, 323 (Tex. App.—Corpus Christi 1982, no writ). However, Gem Homes also alleged and proved that Genstar violated section 17.50(a)(2) of the DTPA by breaching the implied warranty of merchantability on the wallboard it manufactured. The DTPA does allow exemplary damages for breach of warranty, but these are conditional. Tex.Bus. & Com.Code Ann. § 17.50(b)(1) (Vernon 1987). The DTPA provides that if the trier of fact finds that the proscribed conduct of the defendant was committed *knowingly*, the trier of fact may award up to three times the amount of actual damages in excess of $1,000.00. There was no finding that Genstar knowingly breached the implied warranty of merchantability.

The jury, however, did find that Genstar knowingly failed to cure the defective wallboard, but there is no proof in the record that Genstar expressly warranted to Gem Homes that it would repair, replace or "cure" any defects in the wallboard, and this Court has found no law to support an implied warranty to cure or repair. *See* Tex.Bus. & Com.Code Ann. §§ 2.312–2.315 (Vernon 1968). Failure to cure or repair is not among the false, misleading, or deceptive acts or practices prohibited by the DTPA, nor, by definition, is it an unconscionable action or cause of action. *See* Tex.Bus. & Com.Code Ann. §§ 17.46(b), 17.-45(5), and 17.50(a) (Vernon 1987). We cannot determine where Genstar was found to have knowingly committed conduct proscribed by the DTPA.

After viewing all the evidence in the light most favorable to the verdict, we hold there is no evidence to support the jury finding of $50,000.00 in additional damages. To that extent we overrule Gem Homes' points of error relating to damages, and we sustain Genstar's second, third, fourth and seventh cross-points.

We have determined that we must reverse the trial court's judgment n.o.v.; however, we can not render a judgment on the verdict. The evidence necessary to predicate exemplary damages under the DTPA was insufficient, and the evidence of

damages for interest payments, insurance premiums, and taxes does not support the jury finding. Fairness to the parties dictates that the case be retried as a whole. Nor does the evidence support the verdict as to actual damages. Furthermore, appellee has contested, on appeal, its liability in a case involving unliquidated damages. We are precluded from remanding the case only on the issue of damages. We therefore REMAND the case in its entirety to the trial court. Tex.R.Civ.P. 81; *Turner, Collie & Braden v. Brookhollow, Inc.*, 642 S.W.2d 160 (Tex.1982); *County Management, Inc. v. Butler*, 650 S.W.2d 888 (Tex. App.—Austin 1983, dism'd agr.). *See Mader v. Aetna Casualty and Surety Co.*, 683 S.W.2d 731 (Tex.App.—Corpus Christi 1984, no writ).

We duly note that other issues were raised by this appeal, but in light of the fact that we must reverse and remand the entire case on that herein discussed, it is unnecessary to address them and we decline to do so.