Ernest C. SMALLWOOD, Jr., Appellant,

v.

Erma J. JONES, Appellee.

No. 04–90–00094–CV.

Court of Appeals of Texas, San Antonio.

July 31, 1990.

---

Stephen T. Scott, Baucum & Steed, San Antonio, for appellant.

Charles D. Houlihan, Jr., Annalyn G. Smith, Matthews & Branscomb, San Antonio, for appellee.

Before CADENA, C.J., and PEEPLES and BIERY, JJ.

## OPINION

BIERY, Justice.

The issue before this court is whether the record contains any evidence of probative force to support a jury's finding that undue influence was exercised on a testatrix in the execution of her will. Concluding that such evidence does not exist, we affirm the judgment n.o.v. of the court below.

This will contest originated in the probate court of Bexar County. The testatrix was Mrs. Thadis Smallwood, who died on May 3, 1989. The contestant is testatrix' only son, appellant Ernest Smallwood, Jr. The proponent of the will is Erma Jones, appellee and sister of the testatrix, who was named as the principal beneficiary under Mrs. Smallwood's will.

After a jury trial, the jury returned a verdict for appellant Ernest Smallwood, finding that the will was procured by undue influence exerted upon the testatrix by her sister, Mrs. Jones. (The jury found, however, that the testatrix did not suffer from a lack of testamentary capacity.) After the jury verdict, the court disregarded the jury's finding of undue influence and rendered judgment *non obstante veredicto* in favor of the testatrix' sister, directing the will to be probated. Ernest Smallwood appeals from the trial court's judgment.

The testatrix and her husband did not have any children born of the union and adopted a son, appellant Ernest Smallwood Jr. When appellee Erma Jones, the proponent of the will, was seven years of age, she went to live with her elder sister, the testatrix, who reared her for eleven years.

The testatrix as well as the appellee and a second sister, Mrs. Ruby McCullough, all lived in San Antonio. The appellant has lived in Dallas for most of his adult life. The testatrix developed Parkinson's Disease in 1986. The testatrix' husband died in 1987. After the death of the testatrix' husband, her two sisters assisted her with daily living tasks and cared for her as her health declined. The sisters helped her with her marketing, laundry, cooking, cleaning, and bill paying, and provided her with transportation to church and other places.

When her illness worsened in December of 1987, the testatrix stayed at the home of the appellee for a month and then returned to her own home. The testatrix executed her will on January 26, 1988. She died on May 3, 1989. It was found that her will left eighty percent of her estate to her sister Mrs. Jones and the remaining twenty percent to her son Ernest Smallwood, Jr.

It is the contention of appellant Ernest Smallwood that the testimony and evidence adduced at trial together with the logical inferences therefrom support the jury's

finding that the will was a product of undue influence exercised over the mind of Mrs. Smallwood by Mrs. Erma Jones.

The leading Texas case on undue influence is *Rothermel v. Duncan,* 369 S.W.2d 917 (Tex.1963). In *Rothermel,* the supreme court stated that the elements of undue influence which must be proven are:

1) The existence and exertion of an influence;

2) so as to subvert or overpower the mind of the testator at the time of the execution of the will; and

3) the execution of a will which the maker thereof would not have executed but for such influence.

*Id.* at 922.

The burden of proving undue influence is upon the party contesting the will's execution. *Id.* It is, therefore, necessary for the contestant to introduce some tangible and satisfactory proof of the existence of each of the above elements of undue influence. *Id.*

Upon motion, a court may enter judgment *non obstante veredicto* if a directed verdict would have been proper and may disregard any jury finding on a question that has no support in the evidence. TEX.R.CIV.P. 301. If there is any evidence of probative value to support the jury's answer, it is error to disregard the answer. *Houts v. Barton,* 657 S.W.2d 924, 926 (Tex.App.—Houston [1st Dist.] 1983, no writ.). A jury verdict cannot be upheld when it has no support in the evidence. *Callejo v. Brazos Electric Power Co-op, Inc.,* 755 S.W.2d 73, 75–76 (Tex.1988). To sustain the trial court's granting of a motion for judgment n.o.v., an appellate court must determine that there is no evidence to support the jury's findings. *Navarette v. Temple Independent School District,* 706 S.W.2d 308, 309 (Tex.1986); *Trenholm v. Ratcliff,* 646 S.W.2d 927, 931 (Tex.1983); *C & R Transport, Inc. v. Campbell,* 406 S.W.2d 191, 193 (Tex.1966). Concluding that no evidence of probative value supports the jury's finding of undue influence, we affirm the trial court's judgment.

In reviewing a no evidence point, an appellate court is to consider only the evidence favorable to the verdict and all reasonable inferences deducible from the evidence are to be indulged in favor of the jury's finding. *Ortiz v. Flintkote Co.,* 761 S.W.2d 531, 534 (Tex.App.—Corpus Christi 1988, writ denied). When an appellate court reviews a "no evidence" point, all evidence in support of the appellant's position must be viewed in the light most favorable to the jury finding, effect must be given to all reasonable inferences that may properly be drawn therefrom, and all contrary or conflicting evidence must be disregarded. *Glover v. Texas General Indemnity Co.,* 619 S.W.2d 400, 401 (Tex. 1981); *Butler v. Hanson,* 455 S.W.2d 942, 944 (Tex.1970). If there is no more than a scintilla of evidence to support a verdict, a "no evidence" point must be sustained. *Freeman v. Texas Compensation Insurance Co.,* 603 S.W.2d 186, 191 (Tex.1980).

It is under this standard that we will review the evidence presented by the will contestant, appellant Ernest Smallwood. In *Rothermel,* the court initiated its discussion by stating that, pursuant to the "no evidence" standard, it would confine its statement of the evidence to that relied upon by the will contestants to sustain the jury finding. *Rothermel,* 369 S.W.2d at 920. In spite of its recital of the no evidence standard, the *Rothermel* court nonetheless proceeded to set out the evidence relied upon by both the proponent and the contestants of the will. *Id.* at 920–21. Unlike the *Rothermel* court, we will confine our statement of the evidence to that upon which appellant relies to sustain the jury finding of the exercise of undue influence. He relies on the following evidence:

Appellant claims that he had a close relationship with his mother although he did not participate personally in her care. He further testified that Mrs. Jones took over the testratix' affairs beginning in August, 1987, after the death of testatrix' husband. Appellant noted that the testatrix, although she treasured her independence, stayed at the appellee's home for a month when her illness worsened and that the will was exe-

cuted three weeks after the testatrix' stay at her sister's home. The appellant states that it was Mrs. Jones who called the offices of the testatrix' family lawyer, made an appointment for the testatrix to make a will, drove her to the lawyer's office, and waited in the lawyer's reception area while the will was being executed. The appellant's evidence indicated that the testatrix might have first requested the lawyer who drew up the will to leave her entire estate to Mrs. Jones and then changed her mind, ultimately leaving eighty percent of her estate to Mrs. Jones and twenty percent to the appellant. Additionally, the appellant testified that his mother told him that Mrs. Jones was pressuring her relating to how she dressed and kept house. The appellant also testified that his mother sometimes called him "Buddy," which was the name of his deceased uncle. The appellant also claimed that Mrs. Jones was experiencing financial difficulty at the time of the will's execution.

Under the *Rothermel* standard, we find that this evidence constitutes no more than a scintilla of evidence of undue influence.

■ Undue influence must generally be established by circumstantial evidence. *In re Olsson's Estate*, 344 S.W.2d 171, 174 (Tex.Civ.App.—El Paso 1961, writ ref'd n.r. e.). Circumstantial evidence which is equally as consistent with the proper execution of the testator's intent as with undue influence is considered no evidence of undue influence. *Rothermel*, 369 S.W.2d at 922.

■ If all material facts and circumstances shown by the evidence considered together produce in the ordinary mind a reasonable belief that undue influence was exerted in procuring the instrument, they are sufficient to sustain an affirmative finding on the question. *Mayes v. Mayes*, 159 S.W. 919, 922 (Tex.Civ.App.—Galveston 1913, dism'd).

The facts of *Rothermel* are more suggestive of undue influence than are the facts before us, yet there the supreme court found no evidence that such an influence was exerted. *See Rothermel*, 369 S.W.2d 917. In *Rothermel*, the elderly and feeble testatrix lived on an isolated farm with her son. The testatrix' son handled all of the testatrix' business affairs. *Id.* at 920. The son singlehandedly drew up a will leaving his mother's entire estate to himself and kept possession of the will until her death. No attorney was consulted. *Id.* at 920–21. Neither the woman's isolation with her son on the farm, nor her frailty, nor his handling of her business affairs, nor the son himself composing the will, nor his taking possession of the will after its execution were sufficient for the supreme court to find any probative evidence of undue influence.

We have before us no evidence that the free agency of the testatrix was destroyed, that her will was subverted, or that a testament was produced expressing the will of the appellee. *Rothermel* at 922. The evidence that Mrs. Smallwood was ill from Parkinson's disease is no evidence that her mind was subverted or overpowered at the time of the will's execution. *See id.* at 923. Neither was Mrs. Jones' financial condition, nor any "pressure" from Mrs. Jones' about the testatrix' clothing and housekeeping any such evidence. The testatrix' calling the appellant by the name of her deceased brother could arguably indicate mental confusion on the part of the testatrix and thus might suggest lack of testamentary capacity, but we find it to be no evidence of undue influence.

■ The circumstances relied on as establishing the elements of undue influence must be of a reasonably convincing character, and they must not be equally consistent with the absence of the exercise of such influence. *Id.* A solemn testament executed under the formalities required by law by one mentally capable of executing it should not be set aside upon a bare suspicion of wrongdoing. *Id.* at 923.

No two cases of undue influence are alike, and each case must stand or fall depending upon the legal sufficiency of the facts proved. *Rothermel* at 921. The *Rothermel* court directed that the establishment of undue influence must be based upon an inquiry as to the nature and type

of relationship existing between the testator, the contestant, and the party accused of exerting such influence. Appellee was in some respects like a daughter to the testatrix; appellant was testatrix's son.

 The establishment of the fact that a will would not have been executed but for the exertion of an undue influence is generally predicated upon a consideration of whether the testament executed is unnatural in its terms of disposition of property. *Rothermel* at 923. Given the facts before us, we do not consider the testatrix' disposition of her property, with eighty percent bequeathed to appellee and twenty percent to appellant, to be an unnatural one.

It is true that the evidence establishes that the appellee may have had the opportunity to exert influence upon her sister as to the execution of her will. However, a will cannot be set aside on proof of facts which at the most do no more than show an opportunity to exercise influence. *Rothermel* at 923; *Burgess v. Sylvester*, 177 S.W.2d 271 (Tex.Civ.App.), *aff'd* 143 Tex. 25, 182 S.W.2d 358 (1944). If the opportunity to exert such an influence on a person is the result of providing care for that person, the caretaker's acts are equally as consistent with innocence as with wrongdoing. *Rothermel* at 923; *Price v. Taliaferro*, 254 S.W.2d 157 (Tex.Civ.App.—Fort Worth 1952, writ ref'd n.r.e.). There must be some direct or circumstantial evidence to show that an influence was not only present but was exerted with respect to the making of the will itself. *Rothermel* at 923. There is no such evidence here.

A person of sound mind has a perfect legal right to dispose of his property as he wishes. *Id.* It is only when all reasonable explanation in affection for the beneficiary is lacking that the trier of facts may take even an unnatural disposition of property as a sign of the testator's mental subjugation. *Id.* at 923–24. When the evidence offered to prove a vital fact is so weak as to do no more than create a surmise or a suspicion of its existence, the evidence has the legal effect of no evidence. *Stout v. Clayton*, 674 S.W.2d 821, 825 (Tex.App.—San Antonio 1984, writ ref'd n.r.e.).

We have examined the authorities cited by the appellant in his brief in support of the contention that his evidence will support a judgment that the will is not valid. We find that the authorities fail to support the propositions for which he offers them. *See, e.g., Naihaus v. Feigon*, 244 S.W.2d 325 (Tex.Civ.App.—Galveston 1951, writ ref'd n.r.e.); *Skeeters v. Hodges*, 270 S.W. 907 (Tex.Civ.App.—Beaumont 1925, writ dism'd w.o.j.); *Mayes v. Mayes*, 159 S.W. 919 (Tex.Civ.App.—Galveston 1913, writ dism'd w.o.j.).

No more than a scintilla of evidence supports the elements of exertion and effective operation of an influence over the testatrix so as to subvert or overpower her will in the execution of her last will and testament.

The judgment of the probate court is affirmed.