ESTATE OF Ruby L. DAVIS, Deceased.

No. 07–95–0238–CV.

Court of Appeals of Texas, Amarillo.

April 3, 1996.

Rehearing Overruled May 10, 1996.

Agnew & Reed, PLLC Ronnie L. Agnew, Lubbock, for appellant.

Gorsuch & Byrd, James L. Gorsuch, Lubbock, for appellee.

Before REYNOLDS, C.J., and DODSON and BOYD, JJ.

DODSON, Justice.

Bobby, Annessia, and Tina Davis, and Donna Thompson (appellants) appeal from the judgment of the trial court setting aside the last will of their mother as being procured through undue influence, and admitting a previous will to probate. By two points of error, appellants contend the evidence is both legally and factually insufficient to support the jury's finding that Ruby Davis's last will resulted from undue influence. We reverse and remand.

Ruby and Edgar Davis had six children: David, Eddie, Donna, Bobby, Annessia and Tina. On April 12, 1990, Ruby and Edgar executed wills, devising the estate to the surviving spouse, or to the six children in equal shares if the spouse predeceased the testator, and naming Eddie as a successor executor. Edgar became ill in June of 1990,

suffered declining health, and was hospitalized for cancer of the larynx in May of 1991. He remained in the hospital for approximately 44 days, and died June 30, 1991.

During Edgar's last illness, conflicts began to develop in the family. Ruby decided against having Edgar undergo a surgical procedure so that he could be force-fed, and Eddie and David hired an attorney to challenge her decision. Eddie engaged in an argument with Annessia and Tina over the care they were taking of their parents' home, and he left a threatening note on Annessia's car. Annessia, with Tina's assistance obtained a peace bond against Eddie, and Donna later also obtained a peace bond against Eddie. These peace bonds, for all practical purposes, resulted in Eddie being unable to go to his mother's house unless the daughters were elsewhere.

After Edgar died, further conflicts arose over the choice of a casket, where Edgar would be buried, and whether the casket would be open or closed during the funeral. Eddie and David also took two guns they believed their father had given them, from their parents' home without Ruby's knowledge.

After Edgar's funeral, Eddie and David had no further contact with their mother. Likewise, Ruby also made no attempts to reconcile. Annessia and Tina, however, lived with Ruby for some time after Edgar's death, and it is undisputed that they had several conversations concerning the hurtful actions of Eddie and David during the time of, and after, their father's illness.

In October of 1991, Ruby visited an attorney and asked him to change her will. She discussed with him the conflicts that had developed in her family, and requested changes be made so that upon her death, Eddie would not be the executor, Eddie and David each would receive $1,000.00, and the rest of her estate would be divided between Bobby, Donna, Annessia, and Tina. Ruby visited her attorney for a second time to give him a letter detailing her reasons for wanting to change her will, and she actually executed the new will on her third visit.

Ruby Davis died in March of 1994, and appellants sought to have her October 1991 will admitted to probate. Eddie and David contested the will, and after the jury found undue influence was exerted by Donna, Annessia, and Tina, the trial court rendered judgment in contestants' favor. Appellants subsequently perfected this appeal.

Appellants assert the trial court erred in overruling their motion for new trial because there was no evidence to support the finding of undue influence, and alternatively that overruling their motion was in error because the evidence was factually insufficient to support the finding.

■■■ When reviewing a no-evidence point, we consider only the evidence and inferences favorable to the judgment, and disregard all evidence and inferences to the contrary. *Havner v. E–Z Mart Stores, Inc.*, 825 S.W.2d 456, 458 (Tex.1992); *Garza v. Alviar*, 395 S.W.2d 821 (Tex.1965). When considering whether the evidence is factually sufficient to support the judgment, we will consider and weigh all of the evidence and set aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Plas–Tex v. United States Steel Corp.*, 772 S.W.2d 442, 445 (Tex.1989); *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex.1986). Mindful of these standards of review, we now turn to the finding of undue influence.

■■■ Influence is considered undue when the free agency of the testator is destroyed, and a testament is produced that expresses the will of the one exerting the influences rather than the testator's true wishes. *Rothermel v. Duncan*, 369 S.W.2d 917, 922 (Tex. 1963). Before a testament may be set aside on the grounds of undue influence, the contestant has the burden to prove:

1. the existence and exertion of an influence;

2. the effective operation of such influence so as to subvert or overpower the mind of the testator at the time of the execution of the testament; and

3. the execution of a testament which the maker thereof would not have executed but for such influence.

*Id.*

These elements may be proved by circumstantial, as well as direct, evidence. *Estate of Montgomery,* 881 S.W.2d 750, 754 (Tex.App.—Tyler 1994, writ denied). However, a finding of undue influence may not be predicated upon circumstances which are equally consistent with the absence of, or do no more than raise a mere suspicion of, undue influence. *Id.; Green v. Earnest,* 840 S.W.2d 119, 123 (Tex.App.—El Paso 1992, writ denied).

In determining whether the evidence is legally and factually sufficient to support a finding of undue influence, our initial inquiry focuses upon the relationship between the testator, the contestants and the party accused of exerting undue influence. In determining whether undue influence was in fact exerted, we assess the opportunities existing to exert the influence, the circumstances surrounding the execution of the document, the existence of any fraudulent motive, and whether the testator was habitually subjected to the control of the party accused. *Rothermel v. Duncan,* 369 S.W.2d at 923.

The relationship between Ruby and her children undoubtedly provides the environment for such an influence to exist. She was deeply hurt by Eddie and David during and after Edgar's death, and had no contact with them; while at the same time, she was constantly surrounded by and involved in the lives of her daughters. Therefore, we think it quite logical that her daughters would be influential in her life.

Somewhat less clear, however, is the related question of whether that influence was actually exerted. The daughters did have opportunities to exert influence over their mother, as Annessia and Tina lived with Ruby after their father's death, and the women had frequent conversations about Eddie, David and Edgar. Additionally, the record contains testimony that the "girls had their mother wrapped around their finger," and got anything they wanted. The evidence also supports an inference that Ruby's daughters may have had a fraudulent motive because they obtained a peace bond to keep Eddie away from the house, they often discussed their brothers' hurtful behavior, they participated to some extent in discussions of Ruby's wills, and they were constantly in need of money.

Nevertheless, a will cannot be set aside solely upon proof that an opportunity or motive to influence existed. *Id.* There must be some proof the influence was "not only present but that it was *in fact exerted with respect to the making of the testament itself,*" *id.,* and that proof is simply lacking here.

Although the evidence does show the daughters may have talked to Ruby about her wills, and they initiated conversations which may have emphasized and magnified the hurt she felt over the actions of Eddie and David, that evidence alone is insufficient. One may "request or even importune and entreat another to execute a favorable dispositive instrument, but unless the importunities and entreaties are shown to be so excessive as to subvert the will of the maker they will not taint the validity of the instrument with undue influence." *Mason v. Mason,* 369 S.W.2d 829, 838 (Tex.Civ.App.—Austin 1963, writ ref'd n.r.e.) (citing *Curry v. Curry,* 153 Tex. 421, 270 S.W.2d 208, 212 (1954)).

Taking only evidence and inferences favorable to the verdict, we find no evidence to suggest the daughters actually exerted influence with respect to the drafting or execution of Ruby's last will. In fact, the only testimony relating to the circumstances surrounding execution came from her attorney and his secretary, who stated that Ruby visited the office on three separate occasions, she wrote a letter explaining her motivation for changing her will, and she was alone during all three visits. We conclude the evidence is legally insufficient to support a finding of the element of exertion of influence.

The second element stated in *Rothermel* requires proof that the effective operation of the influence subverted or overpowered the mind of the testator at the time of the execution. This inquiry focuses upon the

testator's mental or physical incapacity to resist, and we are required to examine Ruby's state of mind at the time of the execution. *Rothermel v. Duncan,* 369 S.W.2d at 923.

■ Assuming arguendo, we found sufficient evidence of the existence and exertion of an influence, we would nevertheless be unconvinced that Ruby's mind was subverted or overpowered at the time of the execution. The evidence favorable to the verdict discloses Ruby executed the new will soon after Edgar's death, and she was both mentally and physically drained from Edgar's illness and 44–day stay in the hospital, as well as hurt emotionally because of the actions of Eddie and David. However, no evidence exists to establish that her mind was in fact subverted at the time of the execution of the instrument, such that the changes she made to her will reflected desires other than her own. Indeed, the only evidence existing as to her state of mind at the time of execution, came from her attorney who stated she was alone each time she visited, and that he believed that she was making the execution of her own free will. We conclude the evidence is legally insufficient to support the second element.

■ We are equally convinced no evidence exists to support a positive finding as to the third element; that being, the execution of a testament which the testator would not have made but for the alleged influence. Establishment of this element is generally predicated upon an assessment of whether the testament provides for an unnatural disposition of property. In this respect, only where all reasonable explanation for the devise is lacking may the trier of facts consider the disposition as evidence of disorder or lapsed mentality. *Id.* at 923–24. Further, circumstantial evidence which is "equally as consistent with the proper execution of the testator's intent as with undue influence is considered no evidence of undue influence." *Smallwood v. Jones,* 794 S.W.2d 114, 118 (Tex.App.—San Antonio 1990, no writ) (citing *Rothermel v. Duncan,* 369 S.W.2d at 922.)

■ In reviewing the record before us, we are not without a reasonable explanation for the devise made by Ruby. Indeed, two of the testator's sisters, as well as other witnesses stated that Ruby was a very strong-willed woman, and was deeply hurt over the actions of Eddie and David. Therefore, we may not consider the unequal division among her children as an unnatural disposition, or as any evidence of undue influence, and we are left to answer whether the record contains any evidence that the devise is one which would not have been made but for the arguable influence.

Even if the daughters' conversations with Ruby about Eddie and David, and their conversations with her about the will, were sufficient to establish that an influence was in fact exerted, the record is devoid of any supporting evidence that those conversations caused Ruby to change her will. Indulging the inference that the conversations were initiated by the daughters, and in those conversations the daughters dwelled upon the fact that Eddie and David went against Ruby's wishes, took things from her, and ultimately had no contact with her, there is still no evidence from which we may conclude those discussions became undue influence or that those discussions solely caused her to change her will.

■ While we understand a will may be set aside for legal cause, and undue influence is such a legal cause, a will may not be set aside because some interested party, or a jury, disagrees with the disposition. *Mason v. Mason,* 369 S.W.2d at 838. We conclude no legally sufficient evidence exists to support the jury's finding of undue influence as defined by our courts. Furthermore, even if we were to liberally construe the evidence in the record to be some evidence of undue influence, that evidence would be factually insufficient to support the finding. Consequently, we sustain appellants' "no-evidence" point of error. In this connection, we point out that since the appellants did not make a predicate for rendition by making a motion for instructed verdict, objecting to the submission of the issue to the jury, making a motion for judgment *non obstante verdicto,* or making a motion to disregard the jury's verdict, we can only reverse the judgment and grant a new trial. *See Horrocks v. Tex-*

*as Dept. of Transp.,* 852 S.W.2d 498, 499 (Tex.1993).

Accordingly, the judgment is reversed and the cause remanded to the trial court for a new trial.